[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Camara v. Gill Dairy, L.L.C.*, Slip Opinion No. 2026-Ohio-3056.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-3056

CAMARA, APPELLANT, *v.* GILL DAIRY, L.L.C., APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Camara v. Gill Dairy, L.L.C.*, Slip Opinion No. 2026-Ohio-3056.]

*Civil law—Employer intentional torts—R.C. 2745.01—Appellate review of summary-judgment rulings—When a trial court's denial of summary judgment is based on the existence of a dispute of material fact, an appellate court reviewing that determination must consider the record developed at trial, not solely the record as it existed at the time of the summary-judgment ruling—R.C. 2745.01(C) creates a rebuttable presumption that attaches when the plaintiff presents evidence that the employer made a considered decision to remove and not reattach an existing equipment safety guard, and no court may add a substantive requirement that is not contained in the text of the statute—Court of appeals' judgment reversed and cause remanded.*

(Nos. 2023-1599 and 2024-0064—Submitted March 12, 2025—Decided August 12, 2026.)

APPEAL from and CERTIFIED by the Court of Appeals for Madison County, No. CA2022-10-023, 2023-Ohio-2339.

_____

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ., joined and FISCHER, J., joined except as to Part II(A).

**BRUNNER, J.**

{¶ 1} Appellant, Jose Camara, was injured while working for appellee, Gill Dairy, L.L.C. ("Gill Dairy"). He filed suit against Gill Dairy for an employer intentional tort under R.C. 2745.01. As the plaintiff in that lawsuit, Camara had to show that the employer acted "with the intent to injure or with the belief that the injury was substantially certain to occur," R.C. 2745.01(A). If he proved "[d]eliberate removal by an employer of an equipment safety guard," then he would be entitled to a rebuttable presumption that the employer acted with the requisite intent to injure, R.C. 2745.01(C).

{¶ 2} At the summary-judgment stage, the Madison County Court of Common Pleas held that a dispute of material fact existed concerning whether Gill Dairy deliberately removed an equipment safety guard before Camara was injured. The case proceeded to a jury trial, at the end of which the jury reached a verdict in favor of Camara. The Twelfth District Court of Appeals reversed and vacated the trial court's judgment, holding that Gill Dairy should have prevailed on summary judgment because no genuine issue of material fact existed on the question whether Camara was entitled to the rebuttable presumption that Gill Dairy deliberately removed an equipment safety guard or that Gill Dairy intended to injure another.

*See* 2023-Ohio-2339, ¶ 39, 42 (12th Dist.). For the reasons stated below, we reverse the Twelfth District's judgment.

## I. BACKGROUND

### A. Trial-Court Proceedings

**{¶ 3}** Camara filed his suit for employer intentional tort in June 2020. In an amended complaint, he alleged that he was working as a farm laborer for Gill Dairy on April 22, 2019, when he suffered severe injuries while operating a piece of machinery called a sand spreader. The sand spreader was connected to a tractor by a power take-off shaft ("PTO shaft"), which was equipped with a hydraulic motor that caused the PTO shaft to rotate while in use. Camara alleged that the rotation of the PTO shaft created a hazard for anyone nearby. To protect the user and bystanders from that hazard, the PTO shaft was supposed to have safety guards on it, but it did not have any safety guards on it on April 22, 2019.

**{¶ 4}** On that day, Camara observed an oil leak in the sand spreader. He turned the sand spreader off to look for the source of the leak, but when he could not identify the source, he turned the sand spreader on to investigate the matter further. As he looked for the leak, a piece of clothing on his left leg got caught in the unguarded, rotating PTO shaft. The rotation of the PTO shaft pulled Camara toward the machine, then threw him over the shaft to the other side of the tractor. Camara suffered severe and permanent injuries to both legs and his left shoulder, requiring skin grafts and multiple surgeries.

**{¶ 5}** Camara asserted a claim against Gill Dairy of employer intentional tort under R.C. 2745.01 as well as a claim for spoliation of evidence. Only the tort claim is at issue in this appeal. R.C. 2745.01(A) provides:

> In an action brought against an employer by an employee . . .
> for damages resulting from an intentional tort committed by the
> employer during the course of employment, the employer shall not

be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

And R.C. 2745.01(B) provides that "'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death."[1]

{¶ 6} Of particular relevance to this appeal, the statute states that "[d]eliberate removal by an employer of an equipment safety guard . . . creates a rebuttable presumption that the removal . . . was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result," R.C. 2745.01(C). In his amended complaint, Camara alleged that he was entitled to the rebuttable presumption because Gill Dairy had intentionally removed the safety guards from the rotating PTO shaft and the absence of those safety guards caused his injuries.

{¶ 7} Gill Dairy moved for summary judgment, arguing that Camara had not produced any evidence that Gill Dairy had intended to cause Camara or anyone else injury. With respect to the presumption set out in R.C. 2745.01(C), Gill Dairy contended that the evidence showed only that it had failed to repair or replace the safety guards that may have become detached from the PTO shaft during normal, routine use and that that act or omission was insufficient to establish a "deliberate removal" of an equipment safety guard under the statute. In support of its position, Gill Dairy pointed to deposition testimony from Camara, as well as deposition

---

1. We have previously recognized that to prove that an injury arose from an employer intentional tort, the employee must prove that the employer had "either deliberate intent to injure or a belief that injury was substantially certain [to occur]." *Hoyle v. DTJ Ents., Inc.*, 2015-Ohio-843, ¶ 10 (lead opinion); *see also Rudisill v. Ford Motor Co.*, 709 F.3d 595, 603 (6th Cir. 2013) ("what appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same").

testimony and affidavits from the owners of Gill Dairy: Tony Gill and Frank Van Genugten.

{¶ 8} The trial court denied the motion. It concluded that "[i]n resolving doubts and construing evidence against the moving party—Gill Dairy—it was the opinion of the Court that there [was] a genuine issue of material fact that should be presented to the jury, namely whether [Gill Dairy] intentionally removed the safety guard[s] from the subject spreader." Madison C.P. No. CVH 20200107 (Dec. 29, 2021).

{¶ 9} The case then proceeded to a jury trial, at which the jury was presented with the following evidence: Gill Dairy purchased the sand spreader in 2011. The PTO shaft connected the sand spreader to a tractor. When in use, the PTO shaft would rotate at 540 revolutions per minute. The manufacturer included two safety guards designed to protect against hazards created by the rotating PTO shaft. One guard covered the shaft itself ("the PTO shaft guard"); the other covered the point at which the PTO shaft connected to the sand spreader's gearbox ("the PTO coupling guard"). The manufacturer also put warnings on the sand spreader near the PTO shaft stating "DANGER, ENTANGLEMENT HAZARD" and "Keep Guards in Place." (Capitalization in original.)

{¶ 10} The jury was also presented with evidence concerning the condition of the PTO shaft and the guards at various points in time. First, the jury was presented with evidence showing that Gill Dairy had hired a company to replace the sand spreader's hydraulic pump in April 2016. Because the pump was located near the PTO coupling guard, replacing the pump would have required the company to remove the guard and then put it back in place once the new pump was installed.

{¶ 11} Second, the jury was presented with an image from a video that Camara had taken of the sand spreader in March 2018; the image shows that the PTO coupling guard was missing, as was half the PTO shaft guard, thus leaving half the PTO shaft exposed. Camara testified at trial that the image reflected the

condition of the sand spreader from the time he began working at Gill Dairy in October 2017 until his injury in April 2019. Camara further testified that in 2017, he expressed concerns to Van Genugten about the rotating PTO shaft's lacking proper guards. Camara said that in response, Van Genugten told him not to worry about it and to keep working.

{¶ 12} Third, the jury was presented with a report from an investigator with the federal Occupational Safety and Health Administration ("OSHA"). The OSHA investigator found that on April 22, 2019, the PTO coupling guard was not present on the sand spreader, which resulted in Camara's injuries. In his report, the investigator also recounted a conversation that he had had with Van Genugten. With respect to the missing PTO coupling guard, the investigator asked Van Genugten when the guard was removed or what had happened to require the pump mounting to be repaired. Van Genugten responded that he did not know, that he was not involved in the repair, and that Gill had performed the repair. The investigator asked how long ago Gill made that repair, and Van Genugten responded that he did not recall but that the PTO shaft had been without a guard for as long as he could remember.

{¶ 13} Fourth, the jury was presented with a quote that Gill Dairy had obtained in January 2019—just two months before Camara was injured—for a new PTO shaft assembly for the sand spreader. Relatedly, the jury was also presented with a report prepared by an investigator with the Ohio Bureau of Workers' Compensation ("BWC"), which showed that when the investigator asked for a copy of an invoice showing Gill Dairy's purchase of a new PTO shaft assembly in 2019, the investigator was given a copy of the January 2019 quote, albeit with the word "quote" removed. When Camara's counsel confronted Gill at trial with the quote and the document given to the BWC investigator that appeared to have been altered, Gill testified that everything that Gill Dairy had concerning the sand spreader was

6

given to its lawyer and that no one with Gill Dairy had contacted the investigator to inform him that the document was a quote and not an invoice.

{¶ 14} After the parties presented their evidence and gave closing arguments, the trial court instructed the jury on its duties and the law. Among other things, the trial court instructed the jurors as follows with respect to Camara's tort claim:

> The plaintiff claims that his injury was caused by the intentional or deliberate conduct of the defendant.
>
> Before you can find for the plaintiff, you must find by the greater weight of the evidence that:
>
> (A) The plaintiff was an employee of the defendant acting in the course of his employment;
>
> (B) The plaintiff's injury was proximately caused by the defendant's conduct; and
>
> (C) The defendant committed an act or omission with the intent to harm the plaintiff.
>
> . . .
>
> If you find that the defendant deliberately removed an equipment safety guard, you may but are not required to find that the removal was committed with the intent to injure if the injury occurred as a direct result of the deliberate removal.
>
> "Deliberate removal of an equipment safety guard" means that the defendant made a deliberate decision to remove, lift, push aside, take off, or otherwise eliminate an equipment safety guard.
>
> . . .
>
> Deliberate removal by an employer of an equipment safety guard creates a rebuttable presumption that the removal was

committed with intent to injure another if an injury occurs as a direct result.

(Capitalization deleted.) The trial court also gave the jury several interrogatories to answer, including the following:

> (A) Did the defendant, Gill Dairy LLC, deliberately remove an equipment safety guard from the spreader/sand wagon?
> . . .
> (B) Did [the] defendant's removal of an equipment safety guard proximately cause an injury to the plaintiff?
> . . .
> (C) Has the defendant, Gill Dairy LLC, rebutted the presumption of intent to injure the plaintiff by proving by equal or greater weight of the evidence that the defendant did not intend to injure [the] plaintiff?

(Boldface omitted.)

{¶ 15} The jury ultimately reached a verdict in favor of Camara on his tort claim. A majority of the jurors answered yes to interrogatories (A) and (B) and answered no to interrogatory (C). The jury awarded Camara a total of $1,934,000 in compensatory damages. On the spoliation claim, a majority of the jury found that Gill Dairy had willfully destroyed evidence for the purpose of disrupting Camara's ability to prove a claim in a pending or probable lawsuit, but it concluded that the destruction of evidence had not actually disrupted Camara's ability to prove his claim in that lawsuit. For that reason, the jury entered a verdict in favor of Gill Dairy on the spoliation claim.

### B. Court-of-Appeals Proceedings

{¶ 16} The Twelfth District reversed and vacated the trial court's judgment on the tort claim. First, it concluded that even though the case went to trial, Gill Dairy was not prevented from appealing the trial court's denial of its motion for summary judgment. *See* 2023-Ohio-2339 at ¶ 14-16 (12th Dist.). The court of appeals noted that generally, when a motion for summary judgment is denied on the ground that a genuine issue of material fact exists, any error in that decision is rendered moot or harmless if a subsequent trial results in a verdict in favor of the nonmoving party. *See id.* at ¶ 14, citing *Clarkwestern Dietrich Bldg. Sys., L.L.C. v. Certified Steel Stud Assn., Inc.*, 2017-Ohio-2713, ¶ 12 (12th Dist.). But, it noted, a verdict in favor of the nonmoving party following a trial does *not* render moot or harmless an error in the denial of summary judgment concerning a purely legal question. *See id.* at ¶ 15, citing *Clarkwestern Dietrich Bldg. Sys.* at ¶ 12. The Twelfth District concluded that in this case, Gill Dairy's summary-judgment motion raised "a pure question of law": whether proof of Gill Dairy's failure to repair or replace the two safety guards on the sand spreader could establish the employer's "[d]eliberate removal" of an equipment safety guard under R.C. 2745.01(C). *Id.* at ¶ 16. The Twelfth District thus determined that the trial court's denial of summary judgment was therefore reviewable on appeal, despite the results of the jury's verdict at trial. *Id.*

{¶ 17} The Twelfth District determined that as a matter of law, the "[d]eliberate removal" of an equipment safety guard under R.C. 2745.01(C) could not be established by proving an omission—i.e., it could not be proved by showing that an employer failed to repair or replace an existing equipment safety guard. *See id.* at ¶ 31. The court of appeals reasoned that failing to repair or replace an equipment safety guard is akin to an employer's permitting a hazardous condition to exist, which we have held is insufficient to prove that the employer had an intent to injure under R.C. 2745.01. *See id.* at ¶ 28, citing *Houdek v. ThyssenKrupp*

9

*Materials N.A., Inc.*, 2012-Ohio-5685, ¶ 24. The court of appeals also pointed to our holding that "'the "deliberate removal" of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine.'" *Id.* at ¶ 23, quoting *Hewitt v. L.E. Myers Co.*, 2012-Ohio-5317, ¶ 30. According to the Twelfth District, "deliberate removal" is limited to "cases in which an employer acted to remove an existing safety guard" and does not include omissions or an employer's failure to repair or replace a safety guard. *Id.* at ¶ 29. And it observed that nothing in R.C. 2745.01(C) provides that a "deliberate removal" may be proved by evidence showing that an employer failed to repair or replace a safety guard. *See id.* at ¶ 30. The Twelfth District ultimately concluded, "To show a 'deliberate removal,' the plaintiff must show that the employer made a considered decision to remove and not reattach an existing equipment safety guard. The failure to attach a missing safety guard or to repair or replace a broken guard does not trigger the statutory presumption." *Id.* at ¶ 31.

{¶ 18} The court of appeals then applied its legal conclusions to the evidence that was presented at the summary-judgment stage of this case. It noted that Gill and Van Genugten had both submitted affidavits in which they attested that they did not remove or authorize the removal of either the PTO shaft guard or the PTO coupling guard. *Id.* at ¶ 34. And the court noted that other evidence corroborated these attestations and that "[t]he summary-judgment evidence all point[ed]" to the conclusion that "the end of the [PTO] shaft guard had simply broken off as a result of ordinary wear and tear." *Id.* at ¶ 35.

{¶ 19} The Twelfth District found that the evidence at the summary-judgment stage was also insufficient to establish who had removed the PTO coupling guard, noting that "there [was] no evidence that an employee removed it at the direction of either owner." 2023-Ohio-2339 at ¶ 35 (12th Dist.). The court of appeals acknowledged Camara's theory that Gill had removed the PTO coupling

guard while working on the hydraulic pump, along with Camara's averments in an affidavit that Gill had frequently serviced and repaired the sand spreader before Camara's injury and had always returned the equipment to service without the safety guards. *See id.* at ¶ 36. It then pointed to Van Genugten's statements to the OSHA investigator that Gill had repaired the hydraulic pump but that Van Genugten did not know what had happened to the safety guards. *See id.* From this, however, the court of appeals reached the following conclusion:

> No reasonable jury could have found from this evidence that it was Gill who had removed the [PTO coupling] guard. Camara's affidavit testimony merely indicates that safety guards were never in place after each time the sand [spreader] was serviced. He never indicated that the safety guards were present before any of these repairs were made by Gill.
>
> Even if it could be inferred from Camara's affidavit testimony that Gill removed the safety guards, there is no evidence from which a reasonable jury could have found that the removal was "deliberate." As we stated above, in order to establish a "deliberate removal," there must be both a careful and considerate decision to remove a safety guard and the actual removal itself. At most, the evidence shows that, like with the [PTO] shaft guard, Gill Dairy was aware that the [PTO coupling] guard was missing. The evidence is insufficient to find that the [PTO coupling] guard was removed by Gill Dairy as the result of a deliberate decision. All that may be concluded is that the [PTO coupling] guard was removed to work on the hydraulic pump by someone and, for some reason, not reattached. . . .

In sum, the evidence could not support a finding that Gill Dairy made a "deliberate decision to lift, push aside, take off, or otherwise eliminate" the [PTO coupling] guard. *Hewitt*, [2012-Ohio-5317,] at ¶ 2. Nor could the evidence support a finding that Gill Dairy made "a careful and thorough decision to get rid of or eliminate" the [PTO coupling] guard. *Id.* at ¶ 29. Therefore, the presumption of specific intent to injure in R.C. 2745.01(C) does not arise.

2023-Ohio-2339 at ¶ 37-39 (12th Dist.). Finally, the court of appeals concluded that Camara had not provided sufficient direct evidence of his employer's intent to injure that was necessary to survive summary judgment. *See id.* at ¶ 40-42. The court of appeals concluded that the trial court therefore should have granted summary judgment to Gill Dairy on Camara's tort claim. *Id.* at ¶ 42. The Twelfth District reversed and vacated the trial court's judgment on Camara's tort claim and entered summary judgment on that claim in favor of Gill Dairy. *Id.* at ¶ 49-50.[2]

{¶ 20} Camara filed a motion captioned as an application for reconsideration on the ground that the court of appeals had erroneously failed to consider the full trial-court record in its review of the trial court's denial of Gill Dairy's motion for summary judgment. The court of appeals denied the motion, stating that it "did consider the trial evidence and concluded that the evidence presented at trial added little to the summary judgment evidence." No. CA2022-10-023, 5 (12th Dist. Nov. 27, 2023). It added, "While there was evidence that Gill Dairy intentionally removed the [PTO coupling] guard, and that it was responsible

---

2. Because the Twelfth District concluded that Gill Dairy was entitled to summary judgment, it did not address two other assignments of error Gill Dairy presented concerning issues at trial. *See* 2023-Ohio-2339 at ¶ 44-48 (12th Dist.).

for the removal, there was no evidence that Gill Dairy consciously decided not to replace the guard." *Id.*

{¶ 21} Camara also filed a motion asking the court of appeals to certify that its decision in this case is in conflict with the Third District Court of Appeals' decision in *Thompson v. Oberlander's Tree & Landscape, Ltd.*, 2016-Ohio-1147 (3d Dist.), on the issue "whether for purposes of R.C. 2745.0l(C), an employer deliberately removes an equipment safety guard when it makes a considered or deliberate decision to remove and not reattach an equipment safety guard."

{¶ 22} The court of appeals agreed that its decision was in conflict with the Third District's decision in *Thompson* and granted the motion. In doing so, however, it posited the conflict question as follows:

> Must an employee prove, in addition to the employer having mere knowledge of a missing safety guard, that the employer, besides doing nothing, made a deliberate decision not to replace the guard in order to establish a deliberate removal under R.C. 2745.01(C)?

No. CA2022-10-023 at 8 (12th Dist. Nov. 27, 2023). We determined that a conflict does exist and ordered the parties to brief the issue as stated by the court of appeals. 2024-Ohio-880.

{¶ 23} Camara also asked us to exercise our discretionary jurisdiction over two propositions of law:

> **Proposition of Law No. 1:** Requiring an injured employee to establish both the deliberate removal of an equipment safety guard *and* the employer's intent to never replace the guard in order to trigger the presumption of intent to injure under R.C. 2745.01(C)

imposes an additional requirement not contemplated by the statute and limits an employee's right of recovery.

> **Proposition of Law No. 2:** In order to prevent an inequitable result for a prevailing party in an employer intentional tort case, it is necessary to clarify the scope of a post-trial review of summary judgment where the trial court found genuine issues of fact to exist regarding whether the employer intentionally removed the safety guard.

(Boldface and emphasis in original.) We agreed to consider both propositions of law. *See id.* For ease of analysis, we address them in reverse order below. We also consolidated the conflict case with the discretionary appeal. *Id.*

## II. ANALYSIS

{¶ 24} We review questions of law de novo, *see Caldwell v. Whirlpool Corp.*, 2024-Ohio-1625, ¶ 13, and accordingly, we review cases involving a grant of summary judgment de novo, *id.* at ¶ 12.

### A. Proposition of Law No. 2

{¶ 25} Our analysis begins with Camara's second proposition of law, which concerns appellate review of a summary-judgment denial after a trial has been held and, in this case, heard by a jury. The trial court denied Gill Dairy's summary-judgment motion, finding that a genuine issue of material fact existed concerning Camara's tort claim. That decision was not immediately appealable, because it did not constitute a "final order" under R.C. 2505.02(B). *See Mill Creek Metro. Park Dist. Bd. of Commrs. v. Less*, 2023-Ohio-2332, ¶ 11 ("Generally, the denial of a motion for summary judgment is not a final, appealable order."). The decision became final once the facts were determined by a jury, resulting in judgment for Camara on his tort claim. *See* R.C. 2505.02(B)(1) ("An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it

is . . . [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment . . . .”).

{¶ 26} The issue before us concerns the impact of the jury's verdict on appellate review of the summary-judgment order. Camara contends that any error in the trial court's summary-judgment decision concerning the existence of a dispute of material fact on his tort claim was rendered moot when the case proceeded to trial and the jury reached a verdict in his favor on that claim. The court of appeals therefore erred, in Camara's view, because it ultimately decided the appeal based on its conclusion that no dispute of material fact existed regarding the tort claim.

{¶ 27} Gill Dairy responds by pointing out that a jury trial does not render moot errors in a trial court's summary-judgment decision concerning issues of law. Gill Dairy asserts that here, the Twelfth District based its decision on whether evidence offered to prove an employer's omission—i.e., proof that Gill Dairy had failed to repair or replace the two safety guards on the sand spreader—could establish the employer's "deliberate removal" of an equipment safety guard under R.C. 2745.01(C). In Gill Dairy's view, the court of appeals correctly held that Gill Dairy's summary-judgment argument was reviewable on appeal.

{¶ 28} We agree with Camara that the court of appeals erred on this issue. Although both parties correctly identify the applicable principles of law, the court of appeals misapplied the law.

{¶ 29} We have long recognized that "[a] trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." *Balson v. Dodds*, 62 Ohio St.2d 287 (1980), paragraph one of the syllabus. Yet, the nature of an appellate court's review of a summary-judgment decision depends on the nature of the dispute on appeal.

{¶ 30} Gill Dairy is correct that errors of law in a summary-judgment decision are not rendered moot by a subsequent trial and may be reviewed in a

posttrial appeal. *See Bliss v. Johns Manville*, 2022-Ohio-4366, ¶ 13-14. When a trial court's denial of summary judgment is based on the existence of a dispute of material fact, however, an appellate court reviewing the correctness of that determination does not consider solely the record as it existed at the time of the summary-judgment ruling. As we have said, the "final judgment is not to be disturbed solely because it might have appeared before trial that no genuine issue of material fact existed." *Continental Ins. Co. v. Whittington*, 1994-Ohio-362, ¶ 24. Rather, an appellate court must also take into account the full record after trial. *See id.* at ¶ 20. Reversal is appropriate only if the appellate court concludes that no dispute of material fact exists after reviewing the record as it existed *both* at the time of the summary-judgment ruling and the conclusion of the trial. *See id.*; *see also Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion.").

{¶ 31} In the present case, the Twelfth District improperly decided the appeal based on its review of the record at the summary-judgment stage only; the court of appeals' decision does not contain any language indicating that it took into account the record developed at trial. Specifically, after stating that it was reviewing a "pure question of law," 2023-Ohio-2339 at ¶ 16 (12th Dist.), the court of appeals reviewed that question and held that R.C. 2745.01(C)'s use of the term "deliberate removal" requires a plaintiff to show that "the employer made a considered decision to remove and not reattach an existing equipment safety guard," *id.* at ¶ 31. At the summary-judgment stage, a plaintiff such as Camara would not have been required to prove deliberate removal but rather, to show only that a question of material fact existed on that issue. Thereafter, the court of appeals considered the question whether a dispute of material fact existed when the trial court considered Gill Dairy's motion for summary judgment. At that point, however, it should also have considered the evidence admitted at trial. To the

extent that it identified evidence with specificity in reaching its decision on appeal, the Twelfth District pointed solely to material presented at the summary-judgment stage. *See id.* at ¶ 34-39 (detailing the court of appeals' review of affidavits and deposition testimony submitted at the summary-judgment stage).

{¶ 32} The court of appeals overturned the jury's verdict in favor of its segregated pretrial view that no dispute of material fact existed at the summary-judgment stage. This is inconsistent with the law in that it did not take into account the full trial record when considering Gill Dairy's appeal.[3]

**B. Proposition of Law No. 1**

{¶ 33} The first proposition of law focuses on what a plaintiff must prove to be entitled to the "rebuttable presumption" set forth in R.C. 2745.01(C). R.C. 2745.01(A) provides that a plaintiff must prove that the employer committed a tortious act "with the intent to injure another." Division (C) then provides that "[d]eliberate removal by an employer of an equipment safety guard . . . creates a rebuttable presumption that the removal . . . was committed with intent to injure another if an injury . . . occurs as a direct result."

{¶ 34} According to the Twelfth District, "R.C. 2745.01 permits a plaintiff to show an employer's specific intent to injure in two ways. One way is with direct evidence of intent. The other way is by establishing the rebuttable presumption in R.C. 2745.01(C) . . . ." 2023-Ohio-2339 at ¶ 21 (12th Dist.). And the court of appeals determined that R.C. 2745.01(C) requires a plaintiff to prove "that the employer made a considered decision to remove and not reattach an existing

---

3. We recognize that in its entry denying Camara's application for reconsideration, the court of appeals clarified that it "did consider the trial evidence" when issuing its decision. No. CA2022-10-023 at 5 (12th Dist. Nov. 27, 2023). Although that clarification could have established that the court of appeals' decision was consistent with the legal principles discussed above, the explanation it subsequently provided in that entry shows that the court's review of the trial record focused on whether evidence existed at the summary-judgment stage showing that Gill Dairy had "consciously decided not to replace" the PTO coupling guard. *Id.* As we explain in Section II(B) of this opinion, that review was based on an incorrect interpretation of the law. As a result, the court of appeals' clarification did not cure the error apparent in its original decision.

equipment safety guard." *Id.* at ¶ 31.  It then held that as a matter of law, "[t]he failure to attach a missing safety guard or to repair or replace a broken guard does not trigger the statutory presumption." *Id.*

**{¶ 35}** Camara argues that the court of appeals effectively added a requirement to R.C. 2745.01(C): that in addition to proving that Gill Dairy deliberately removed the equipment safety guards from the sand spreader, Camara also had to prove that Gill Dairy intentionally decided not to reattach the guards. We agree that the court of appeals erred in requiring this.

**{¶ 36}** There are several problems with the court of appeals' reasoning.  The Twelfth District said that R.C. 2745.01 allows a plaintiff to prove intent to injure with either direct evidence or by establishing his entitlement to the rebuttable presumption.  2023-Ohio-2339 at ¶ 31, 40 (12th Dist.).  But R.C. 2745.01 does not make any express distinctions between the use of direct and circumstantial evidence.  R.C. 2745.01(A) requires proof of an "intent to injure another," but it does not address the nature of evidence—direct or circumstantial—that must be presented on that point.  It is also axiomatic that direct and circumstantial evidence may carry the same weight at trial, *see State v. Dunn*, 2024-Ohio-5742, ¶ 32, but the weight of the evidence is never a consideration at the summary-judgment stage, *see Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 19.

**{¶ 37}** R.C. 2745.01(C) likewise does not make any express distinction between direct and circumstantial evidence.  Instead, the statutory division addresses how the intent-to-injure element may be established.  *See Hoyle v. DTJ Ents., Inc.*, 2015-Ohio-843, ¶ 12 (lead opinion), quoting *Irondale Indus. Contrs., Inc. v. Virginia Sur. Co., Inc.*, 754 F.Supp.2d 927, 933 (N.D.Ohio 2010) ("R.C. 2745.01(C) . . . 'merely provides a legally cognizable example of "intent to injure.""").  The court of appeals incorrectly differentiated the two means by which a plaintiff may prove an employer's liability under R.C. 2745.01 by failing to

recognize that the presumption available to a plaintiff under R.C. 2745.01(C) may likewise be established by either direct or circumstantial evidence.

{¶ 38} Second, when a plaintiff offers evidence that an employer deliberately removed an equipment safety guard, nothing in R.C. 2745.01(C) indicates that the rebuttable presumption is available only if the plaintiff *also* proves that the employer specifically decided not to reattach the safety guard. The plain text of R.C. 2745.01(C) makes clear that the rebuttable presumption is available when the plaintiff offers evidence of an employer's "deliberate removal" of an equipment safety guard. No more and no less is required.

{¶ 39} If the plaintiff establishes entitlement to the rebuttable presumption, the employer may, of course, present evidence to rebut it—e.g., evidence that it did *not* have the intent to injure another—if it has such evidence. And if it does so, "then the presumption disappears and the case must be disposed of on the evidence presented, without reference to the presumption." *Hoyle* at ¶ 24 (lead opinion). The court of appeals was correct that R.C. 2745.01(C) creates a rebuttable presumption that attaches when the plaintiff presents evidence that the employer "made a considered decision to remove and not reattach an existing equipment safety guard," 2023-Ohio-2339 at ¶ 31 (12th Dist.), but no court may add a substantive requirement that is not contained in the text of R.C. 2745.01(C), as the court of appeals did in this case.

{¶ 40} When the court of appeals limited Camara's claim to one based solely on Gill Dairy's failure to replace the sand spreader's safety guards and ignored Camara's claim that Gill Dairy had deliberately removed the safety guards, it contorted the analysis in such a way that led it to discuss case law regarding whether an employer's omission could constitute deliberate removal. For example, it examined one case in which this court rejected the idea that an employer's failure to instruct an employee to wear certain protective equipment constituted the "deliberate removal" of a safety guard. *See* 2023-Ohio-2339 at ¶ 23 (12th Dist.),

citing *Hewitt v. L.E. Myers Co.*, 2012-Ohio-5317. In *Hewitt*, we stated that "the 'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, *take off, or otherwise eliminate* that guard from the machine." (Emphasis added.) *Hewitt* at ¶ 30. But by focusing on *Hewitt*, the Twelfth District missed that the rebuttable presumption can be triggered by proving—either with direct or circumstantial evidence—that it was the employer who removed the safety guard. The Twelfth District in this case did not consider whether the jury's verdict may have been based on its view that the evidence showed that Gill Dairy itself had taken off or otherwise eliminated the PTO coupling guard and half the PTO shaft guard.

{¶ 41} From our review of the record developed at trial, we conclude that sufficient evidence existed to enable reasonable members of a jury to conclude that Gill Dairy deliberately removed the sand spreader's safety guards. The evidence in the trial record shows that Gill Dairy hired someone to replace the sand spreader's hydraulic pump in 2016, which required the PTO coupling guard to be removed; that safety guard could then be reattached once the new pump was installed. The jury also learned that the PTO coupling guard and half the PTO shaft guard were missing as of March 2018, as demonstrated by the image and video taken by Camara. The jury heard Camara's testimony that the image and video accurately depicted the state of the sand spreader and the PTO shaft between the time he started working at Gill Dairy in October 2017 and when his injury occurred on April 22, 2019. The jury was also presented with the report from the OSHA investigator, which stated that Van Genugten had told the investigator that Gill had performed repair work on the PTO coupling guard at some point in the past.

{¶ 42} While this evidence may not have been indisputable, the jury could have reasonably believed that it showed that Gill Dairy had deliberately removed the PTO coupling guard from the sand spreader, either when the sand spreader's hydraulic pump was replaced in 2016 or while otherwise working on the spreader

at some point thereafter. The jury could have also believed that this view of the evidence was supported circumstantially by the fact that, through its lawyer, Gill Dairy presented the BWC investigator with a copy of the January 2019 quote that it obtained for a new PTO assembly that appears to have been altered to look like an invoice.

{¶ 43} These conclusions may not have been the *only* permissible conclusions that a jury could draw from the evidence. What matters for present purposes is that these were conclusions that the jury *could* have reasonably reached, since summary judgment may be granted only when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made," Civ.R. 56(C).

{¶ 44} In its entry denying Camara's application for reconsideration, the Twelfth District acknowledged that evidence existed in the record that would have enabled a reasonable jury to find that Camara was entitled to the rebuttable presumption set forth in R.C. 2745.01(C) when it stated that the trial evidence "showed that the [PTO coupling] guard had been removed for repair purposes, and Gill Dairy may have been aware that it had not been replaced" and that "there was evidence that Gill Dairy intentionally removed the [PTO coupling] guard, and that it was responsible for the removal." No. CA2022-10-023 at 5 (12th Dist. Nov. 27, 2023).

{¶ 45} We therefore hold that the court of appeals erred by reversing and vacating the trial court's judgment on Camara's tort claim.

### C. Certified-Conflict Question

{¶ 46} The foregoing analysis also informs our answer to the certified-conflict question. As discussed above, the Twelfth District reframed the conflict question presented by Camara. It identified the question as follows:

> Must an employee prove, in addition to the employer having mere knowledge of a missing safety guard, that the employer, besides doing nothing, made a deliberate decision not to replace the guard in order to establish a deliberate removal under R.C. 2745.01(C)?

No. CA2022-10-023 at 8 (Nov. 27, 2023). Consistent with our analysis above, the answer to this question is no.

{¶ 47} As noted in the Attorney General of Ohio's amicus curiae merit brief, "the phrasing of the certified question poses a false dichotomy," because answering the question in the negative does not necessarily mean that the rebuttable presumption applies anytime an employer has knowledge of a missing equipment safety guard and does nothing to replace it. As we have explained, the rebuttable presumption under R.C. 2745.01(C) is available only when the plaintiff establishes an employer's "deliberate removal" of an equipment safety guard. R.C. 2745.01(C) does not also require proof that the employer intentionally failed to replace the guard. For the rebuttable presumption to attach, the plaintiff must establish only a "deliberate removal," *id.*—nothing more.

### III. CONCLUSION

{¶ 48} For the foregoing reasons, we reverse the Twelfth District Court of Appeals' judgment, and we answer the certified-conflict question as posited by Camara in the negative. We remand this case to the Twelfth District for it to consider the two assignments of error presented by Gill Dairy that it declined to address.

Judgment reversed
and cause remanded.

_____

Thrasher Dinsmore & Dolan and Christopher A. Holecek; Wegman Hessler Valore, Jay R. Carson, and Angela M. Lavin, for appellant.

Curry Roby, L.L.C., Bruce A. Curry, Lisa C. Haase, and Trent M. Thacker, for appellee.

Scanlon & Co., L.L.C., and James R. Galla, in support of appellant, for amicus curiae Ohio Association for Justice.

D. Andrew Wilson, Attorney General, Mathura J. Sridharan, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, in support of appellant, on behalf of amicus curiae Ohio Attorney General D. Andrew Wilson.

Garvin & Hickey, L.L.C., Preston J. Garvin, John D. Hance, and Michael J. Hickey, in support of appellee, for amici curiae Ohio Alliance for Civil Justice and Ohio Chamber of Commerce.

Dickinson Wright, P.L.L.C., and Kevin D. Shimp, in support of appellee, for amici curiae Ohio Alliance for Civil Justice and Ohio Chamber of Commerce.

Collins Roche Utley & Garner, L.L.C., and Kurt D. Anderson, in support of appellee, for amicus curiae Ohio Association for Civil Trial Attorneys.

_____